# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BRUCE JOINER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 3:17-cv-02692 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# DEFENDANT UNITED STATES' REPLY TO PLAINTIFF'S OPPOSITION TO UNITED STATES' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FAILURE TO STATE A CLAIM

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch
Civil Division

RUPERT M. MITSCH
Assistant Director, Torts Branch
Civil Division

PHILIP D. MACWILLIAMS
Trial Attorney, Torts Branch
Civil Division

Attorneys for the United States of America

## INTRODUCTION

The United States filed a motion to dismiss this action in its entirety pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, Rule 12(b)(6) for failure to state a claim. Dkt. # 8, 9, 10.  Plaintiff filed an opposition.  Dkt. # 18 (herein "Pl. Opp.").  For the reasons set forth in the United States' motion and in this reply, this action must be dismissed with prejudice.

## ARGUMENT

**I.  Plaintiff's Claims Are Barred By The Discretionary Function Exception**

**A.  The FBI Did Not Violate Any Federal Statutes, Regulations, or Agency Policy**

**1.  The Communications With Simpson Did Not Violate FBI Policy**

Plaintiff argues that UCE-1's communications with Simpson violated FBI policy, to wit the Undercover and Sensitive Operations Unit: Attorney General's Guidelines on FBI Undercover Operations ("AG Guidelines"), and FBI Domestic Investigations and Operations Guide ("DIOG")   Pl. Opp. at 7-9.  However, the investigation pursuant to which UCE-1 communicated with Simpson was a national security counterterrorism investigation.  Dkt. # 10 at App'x 39.  The declaration could not be any clearer: the National Security Undercover Operations Policy Guide (NSUOPG) "functions as a standalone policy, and *there is no other FBI policy* that specifically applies to the operational conduct of FBI undercover activity in the context of a national security investigation."  Dkt. # 10 at App'x 40 (emphasis added).  Even without the benefit of this declaration, language in the DIOG and AG Guidelines make clear that they are inapplicable to undercover activity in the national security context.  The DIOG states at Section 17.3 that it applies to an "undercover operation in relation to activity in violation of federal criminal law that does not concern a threat to the national security or foreign

intelligence[.]" Similarly, the AG Guidelines "apply to all investigations conducted by the FBI, except those conducted pursuant to its foreign counterintelligence and foreign intelligence responsibilities." Thus, Plaintiff's reliance on these manuals is misplaced.[1]

Even if the cited policies were applicable, the discretionary function exception would still apply. The section of the AG Guidelines that Plaintiff cites states that "[w]hen an undercover employee learns that persons under investigation intend to commit a violent crime, he or she shall try to discourage the violence." Pl. Opp. at 7. Assessing whether a person intends to commit a violent crime involves the exercise of judgment, as does deciding how to "try" to discourage it. *See Gonzalez v. United States*, 814 F.3d 1022, 1029-30 (9th Cir. 2016) (deciding what is "serious criminal activity" is a judgment call, and "where . . . a government agent's performance of an obligation requires that agent to make judgment calls, the discretionary function exception applies.") (citations omitted). As for the putative requirement in the DIOG to obtain authorization to engage in "Otherwise Illegal Activity," the allegations simply do not establish that UCE-1 engaged in such activity. As noted, UCE-1 sent the innocuous message "tear up Texas" to Simpson while posing online undercover as an ISIS sympathizer, and Plaintiff can point to no further communications or interactions with Simpson before or during the event. Instead, Plaintiff tries to muddy the waters by referring to communications between UCE-1 and Hendricks (not Simpson or Soofi) during the event, Pls. Opp. at 7, 17, 19, despite knowing full well that Hendricks was neither at the event nor in contact with Simpson or Soofi. Dkt. # 9 at 16 n.9. Moreover, UCE-1's interactions with Simpson or Soofi before or during the event – or,

---

[1] In so far as the DIOG has any relevance, it is with respect to the sharing of national security information with other agencies. Dkt. # 10 at App'x 42-43. Whether and how to share such information is protected by the discretionary function exception. Dkt. # 9 at 2, 13, 17-18. Plaintiff has not addressed this argument, and thus concedes the point.

**Reply to Plaintiff's Opposition to Motion to Dismiss - 2**

more accurately, lack thereof – was litigated during the prosecution of Kareem, where the district court found a lack of contact between UCE-1 and Simpson and Soofi, and that UCE-1's attendance at the event simply "had nothing to do with Simpson." Dkt. # 9 at 16 n.9. Plaintiff does not address this finding at all, let alone point to any credible basis for disputing it. Thus, Plaintiff has not credibly alleged that UCE-1 engaged in "otherwise illegal activity."

### 2. The FBI Did Not Violate Any Statutes or Regulations Relating To Soofi's Handgun Purchase

Multiple documents Plaintiff relies on in his Complaint state that he was shot with an assault rifle, not a handgun. Dkt. #9 at 18 n.11 (citing App'x 79, 81, 83, 88, 92, 100). Plaintiff does not challenge the accuracy of these statements, but tries to sidestep the issue by noting that the FBI has declined to comment on the type of gun used during the shooting. Pl. Opp. at 10. However, a lack of comment by the FBI in no way contradicts the multiple eye-witness statements that Plaintiff was shot with an assault rifle. Thus, the FBI's background check relating to Soofi's purchase of a handgun is of no relevance to this action.

Moreover, Plaintiff has not carried his burden of demonstrating that Soofi was, at the time of the handgun purchase in 2010, prohibited from purchasing a firearm. Dkt. # 9 at 21. Belatedly, Plaintiff now asserts that Soofi was an "unlawful user" of controlled substances per 18 U.S.C. § 922(g)(3). Pl. Opp. at 11. In support, Plaintiff cites to yet another news article, this one stating that in 2003 Soofi was charged in Utah with class B misdemeanor counts of distributing a controlled substance and possession of drug paraphernalia, but the case was dismissed. Pl. Opp. at 11 n.50. The statute does not define "unlawful user," but courts have held that "there must be some regularity of drug use in addition to contemporaneousness to meet the statute's requirements." *United States v. Patterson*, 431 F.3d 832, 839 (5th Cir. 2005) (citing *United*

*States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004).[2] Moreover, the regulation requires that the "unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct." 28 C.F.R. § 478.11. The regulation also states, by way of example, that an inference of current use "may" be drawn if there was a "conviction" for use or possession within the past year, or "multiple" arrests within the past five years with the most recent arrest being within the past year. *Id*. By contrast, Plaintiff points to only a single misdemeanor charge – that was dropped, no less – seven years earlier. This does not show a pattern or regularity of drug use proximate to the 2010 gun purchase. In any event, deciding whether a prospective purchaser is an "unlawful user" based on the frequency and recency of his or her drug use clearly involves the exercise of judgment.[3]

Finally, Plaintiff contends that it is "highly unusual" for a "block" to be lifted after only 24 hours when the prospective purchaser is on a terror watch list. Pl. Opp. at 11.[4] The Complaint does not allege that Soofi was on such a list at the time of the gun purchase, and even if he was, being on such a list is not a prohibiting factor under the law. Moreover, Plaintiff fails to explain why it even matters that a sale was placed in a "Delayed" status for 24 hours rather

---

[2] *See also United States v. Jackson*, 280 F.3d 403, 406 (4th Cir.2002) (there must be "a pattern of use and recency of use" to be an "unlawful user"); *United States v. Purdy*, 264 F.3d 809, 812-13 (9th Cir. 2001) ("[T]o sustain a conviction under § 922(g)(3), the government must prove . . . that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his . . . possession of a firearm.").

[3] Plaintiff makes no attempt at all to carry his burden of showing that Soofi was prohibited based on convictions for felonies or domestic assault, instead stating that it is "unclear" and asking for discovery. Pl. Opp. 11. For the reasons noted *infra* at 9-10, this request should be rejected.

[4] The terms "block" and "hold" do not appear in the statute or regulations. For purposes of the motion to dismiss and this reply, the United States assumes Plaintiff is alleging that the sale was placed in a "Delayed" status.

**Reply to Plaintiff's Opposition to Motion to Dismiss - 4**

than 72 hours when the prospective purchaser is not prohibited from purchasing a gun under § 922(g) or (n).

### 3. The Due Process Clause Does Not Defeat the Discretionary Function Exception

Plaintiff argues that the discretionary function exception does not apply to constitutional violations, and, invoking the "state created danger theory," argues that the Due Process Clause of the Constitution was violated. Pl. Opp. at 12-13. The Fifth Circuit is not among the Courts of Appeal to have held that conduct deemed to be unconstitutional necessarily falls outside of the discretionary function exception. *See Spotts v. United States*, 613 F.3d 559, 569 (5th Cir. 2010) (the Fifth Circuit has "not yet determined whether a constitutional violation, as opposed to a statutory, regulatory, or policy violation, precludes the application of the discretionary function exception.").[5] Even if the Constitution could render conduct non-discretionary, the relevant part of the Constitution must set forth a sufficiently defined course of action, which the Due Process clause does not. *See Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (holding that the Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render the discretionary function exception inapplicable").

In any event, the Court need not delve into the question of whether and when the Constitution could preclude application of the discretionary function exception, because the Fifth Circuit has "consistently refused to adopt the state-created danger theory." *Dixon v. Alcorn Cnty.*

---

[5] *See also Lopez v. U.S. Immigration & Customs Enforcement*, 455 F. App'x 427, 434 (5th Cir.2011) (same); *Tsolmon v. United States*, No. 13–3434, 2015 WL 5093412, *10 (S.D. Tex. Aug. 28. 2015); *Patty v. United States*, No. 13–3173, 2015 WL 1893584, *9 (S.D. Tex. Apr. 27, 2015). Notably, the Fifth Circuit will not entertain an argument that the Constitution precludes application of the discretionary function exception when, as here, a constitutional claim is not pleaded in the Complaint. *Patel v. United States*, 398 Fed. App'x 22, 25 (5th Cir. 2010).

**Reply to Plaintiff's Opposition to Motion to Dismiss - 5**

*Sch. Dist.*, 499 Fed. Appx. 364, 366 & n.2 (5th Cir.2012) (citing cases).[6]  Moreover, the Fifth Circuit has stated that if it were to adopt this theory, it would require the following elements:

> Specifically, a plaintiff would have to show (1) that the environment created by the state actor is dangerous, (2) the state actor must know it is dangerous (deliberate indifference), and (3) the state actor must have used its authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.

*Dixon,* 499 Fed. Appx. at 366–67.

In addition, there must be a "known victim." *Id.* (internal marks citations omitted).  In other words, the actor "must be aware of an immediate danger to a specific and identifiable [person]."  *Dixon,* 499 Fed. Appx. at 367.

Plaintiff fails to meet this test.  First of all, UCE-1 did not create an opportunity for this attack that otherwise would not have existed; obviously, Simpson and Soofi had the opportunity to attack the event, regardless of any communications with UCE-1.  Moreover, even if UCE-1 did create an opportunity, he would have had to do so by exercising his authority.  However, UCE-1 was undercover and unknown to be an FBI agent to Simpson and Soofi, so whatever authority UCE-1 possesses as an FBI agent simply played no role here.  Finally, Plaintiff was not a "known victim."  Plaintiff argues that, as a security guard at the event, he was among the likely victims should an attack occur.  Pl. Opp. at 13.  But simply being among those who were

---

[6] *See also Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010) ("The Fifth Circuit has not adopted the "state-created danger" theory of liability) (citations omitted); *Whitley v. Hanna*, 726 F.3d 631, 639 n.5 (5th Cir.2013) ("[T]his court has not adopted the state-created-danger theory"); *Rios v. City of Del Rio*, 444 F.3d 417, 422 (5th Cir. 2006) ("[N]either the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a recovery on the basis thereof"); *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) ("This court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability"); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 & n. 5 (5th Cir. 2003) ("We have never recognized state-created danger as a trigger of State affirmative duties under the Due Process clause.").

**Reply to Plaintiff's Opposition to Motion to Dismiss - 6**

potentially in general danger did not make him a "known victim," just as all of the other attendees and passersby likely to be in harm's way are not "known victims." *Cf. Estate of C.A. v. Castro*, 547 F. App'x 621, 627 (5th Cir. 2013) (student who drown was not a "known victim" even though school was made aware of his inability to swim, because risk of drowning was a general risk for all such students who were near the pool); *Dixon*, 499 Fed. Appx. at 368 (conduct of school that presented a risk of harm to students in general is inadequate to satisfy the known victim requirement).

### B. The Alleged Conduct is Susceptible to Policy Analysis

The conduct of an undercover agent in a national security operation involves the balancing of multiple policy considerations. Dkt. #9 at 12-16. Plaintiff responds that the conduct of UCE-1 is not protected by the discretionary function exception because it drew scrutiny from Congress. Pl. Opp. at 14-15. However, whether conduct draws scrutiny from members of Congress is not the test and, quite frankly, is irrelevant. Nor does Plaintiff offer any response to the Government's argument that the statutory and regulatory scheme relating to the purchase of firearms is grounded in policy. Rather, Plaintiff offers a circular argument that the exception does not apply because the FBI did not prevent Soofi from purchasing a gun, without actually establishing that Soofi was prohibited from purchasing a gun at the time under applicable law. Pl. Opp. at 16.

Plaintiff does not address the Government's argument that decisions by the FBI regarding whether to intervene in criminal or terror activity is susceptible to policy analysis, as are decisions regarding whether and how to warn local law enforcement of potential criminal or terror activity. Thus, Plaintiff concedes the argument.

**II. Sovereign Immunity Has Not Been Waived For Claims Under The Anti-Terrorism Act**

Plaintiff argues that the Geneva Convention precludes Congress from retaining sovereign immunity for claims against the United States for violations of the Anti-Terrorism Act ("ATA"). Pl. Opp. 21-25. First of all, Plaintiff could not bring an action against the United States – or anyone, for that matter – for violations of the Geneva Conventions, because the Geneva Conventions are not self-executing treaties that permit a private cause of action. *See In re Iraq and Afghanistan Detainees Litigation*, 479 F.Supp.2d 85, 115 (D.D.C. 2007) (citing *Tel–Oren v. Libyan Arab Republic*, 726 F.2d 774, 808 (D.C. Cir.1984) (per curiam) (Bork, J., concurring).[7] If a person cannot bring suit for violations of the Geneva Conventions in the first place, then it makes absolutely no sense to argue that the Geneva Conventions negate Congress's ability to preserve sovereign immunity for claims based on violations of that treaty. Moreover, Plaintiff's claims are not based on violations of the Geneva Convention, but rather for violations of the ATA. Thus, Plaintiff's leap of logic is further compounded by how he conflates the Geneva Convention with the ATA. Even if a person could bring suit for violations of the Geneva Convention *and* even if Congress could not retain sovereign immunity for violations of the Geneva Convention (neither of which are the case), that would have no bearing whatsoever on Congress's ability to retain sovereign immunity for claims bought under a totally separate statute such as the ATA.

---

[7] *See also United States v. Fort*, 921 F. Supp. 523, 526 (N.D. Ill. 1996) ("[T[he Geneva Conventions ... are not self-executing and, thus, provide no basis for the enforcement of private rights in domestic courts."); *Ameur v. Gates*, 950 F. Supp.2 d 905, 915 (E.D. Va. 2013) ("[T]he Geneva Convention may not be invoked 'as a source of rights in any court of the United States' in a suit where the United States is a party.") (quoting *Noriega v. Pastrana*, 564 F.3d 1290, 1296–97 (11th Cir.2009)); *accord Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 969 (4th Cir. 1992) ("Hague Convention is not self-executing and, therefore, does not, by itself, create a private right of action for its breach.").

**III. Plaintiff Is Not Entitled To Discovery**

Plaintiff contends that he is entitled to discovery before the Court rules on the motion to dismiss. Pl. Opp. at 4-5. "The party seeking discovery bears the burden of showing its necessity[,]" and, to meet this burden, must allege the "specific facts crucial to immunity which demonstrate a need for discovery." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (citations omitted). That burden is not met if the requested discovery is not likely to produce the facts needed to show that immunity does not apply. *Id*. at 342. Plaintiff has not met his burden. Plaintiff seeks discovery on "whether an FBI agent assisted Simpson and Soofi in obtaining the weapons used in the attack," but such a far-fetched allegation was not in the Complaint and Plaintiff offers nothing to even remotely suggest such a scenario.[8] Plaintiff also seeks discovery into whether Soofi's handgun purchase was "unlawful," but insofar as Plaintiff contends that Soofi was prohibited from purchasing a firearm, Plaintiff offers no reason as to why he has not or cannot obtain Soofi's arrest and conviction records, which typically are a matter of public record. In addition, Plaintiff seeks discovery as to whether UCE-1 was authorized to engage in "Otherwise Illegal Activity," *id*., but this argument is based on an inapplicable policy manual, and presupposes that UCE-1's conduct was "Otherwise Illegal Activity," which it was not. *See supra* at 2-3. Finally, regarding UCE-1's conduct, Plaintiff does not challenge the FBI's declaration regarding the lack of any agency policy setting forth mandatory directives relating to the conduct of undercover employees during a national security investigation, nor does he seek discovery on the matter.[9] Rather, Plaintiff seeks discovery regarding "what extent UCE-1

---

[8] Plaintiff also fails to mention that Abdul Malik Abdul Kareem was convicted for providing weapons to Simpson and Soofi. *See United States v. Kareem*, 2:15-CR-707 (D. Ariz.).

[9] As noted, Plaintiff points to agency policies that, for the reasons stated above, are not applicable, and, in any event, were not violated by the alleged conduct.

**Reply to Plaintiff's Opposition to Motion to Dismiss - 9**

coordinated with the terrorists in relation to the attack[,]" but such conduct by an undercover agent is protected by the discretionary function exception, even if it results in harm to innocent persons. In other words, the Court can accept the allegations as true and the exception still applies. Dkt. # 9 at 12-17. Thus, Plaintiff seeks an opportunity to "flesh out" the alleged negligence of the FBI, but offers no specific facts that, if proven true, would or could take UCE-1's conduct outside the exception. *See Freeman*, 556 F.3d at 343. Moreover, UCE-1's interaction with Simpson and Soofi at the event – or, lack thereof – was already addressed by the district court during the prosecution of Kareem, Dkt. #9 at 16 n.9, and Plaintiff fails to address that decision or offer any credible reason for doubting the court's findings.

**IV. Plaintiff Cannot Establish A Duty Under Texas Law or the Elements of Assault**

Plaintiff argues that the Government owed him a duty under Texas law because the FBI "at least partially created" the danger. Pl. Opp. at 16. For the reasons noted, the "tear up Texas" comment, when understood in the proper context of an undercover FBI agent posing online as an ISIS sympathizer and communicating with potential recruits as part of an investigation of Hendricks, cannot be realistically be described as creating the mass shooting attempt, as Plaintiff does not and cannot plausibly allege that Simpson and Soofi would not have made such an attempt without that comment. Regarding UCE-1's alleged conduct at the event, as noted above Plaintiff tries to sow confusion by referring to communications between UCE-1 and Hendricks (not Simpson or Soofi). For these same reasons, Plaintiff's response to the Government's argument that the elements of assault have not been met also fails.

## CONCLUSION

For the foregoing reasons, this action must be dismissed with prejudice for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.

**Reply to Plaintiff's Opposition to Motion to Dismiss - 10**

/s/ Phil MacWilliams
PHILIP D. MACWILLIAMS
Trial Attorney
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
175 N Street, NE
Room 11-1330
Washington, DC 20530
Telephone: (202) 616-4285
Facsimile: (202) 616-5200

Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2018, I caused to be served upon the following counsel a true and correct copy of the United States' Reply to Plaintiff's Response to Motion to Dismiss for Lack of Subject Matter Jurisdiction or, In The Alternative, Failure to State a Claim, via ECF filing:

Trenton Roberts
Roberts & Willie, PLLC
2000 S. Dairy Ashford, Suite 390
Houston, Texas 77077
Phone: (832) 328-7345
Email: trenton@robertsandwillie.com
Attorney for Plaintiff

/s/ Phil MacWilliams
PHILIP D. MACWILLIAMS